IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DIVISION OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LARRY AUTREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | |
| PONTOON BOAT, LLC | ) | |
| D/B/A BENNINGTON, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Larry Autrey ("Larry"), by counsel, and for his Complaint against Defendant, Pontoon Boat, LLC, d/b/a Bennington. ("Bennington"), states and alleges the following:

### I.   NATURE OF THE ACTION

1.   Plaintiff, Larry Autrey is an African-American male, and brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, to remedy acts of employment discrimination based on race and retaliation perpetrated against him by Defendant Bennington. Plaintiff alleges that Defendant Bennington discriminated against him by refusing to give him periodic raises which other similarly situated white employees received.  Plaintiff further alleges Defendant selected him for lay him off, which eventually led to his termination, in retaliation for Plaintiff making multiple complaints of racial discrimination related to pay and pay increases to his manager and the Defendant's Human Resource Department.

1

## II.     THE PARTIES

2. Plaintiff, Larry Autrey, a black male, is a citizen of the United States and resident of the State of Indiana.

3. Defendant, Bennington, is an Indiana corporation which maintains its principal place of business in Elkhart, Indiana.

## III.     JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this matter is based on an alleged violation of a federal law and therefore raises a federal question.

5. Defendant is an "employer" as defined by 42 U.S.C. § 2000e(f).

6. The acts of Bennington's administrator's office, officers, managers, supervisors, employees or agents, are also the acts of Bennington.

7. This Court has personal jurisdiction over Defendant as Defendant operated its business in the State of Indiana.

8. Venue is properly placed in this district because the events giving rise to this action occurred in the Northern District of Indiana, pursuant to 28 U.S.C § 1391(b).

## IV.     ADMINISTRATIVE PROCEDURES

9. On or about November 1, 2019, Larry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Bennington for racial discrimination and retaliation in violation of the Title VII of the Civil Rights Act of 1964, Charge Number 470-2019-03495 ("the Charge"). A copy of the Charge is attached hereto and incorporated herein by reference as **"Exhibit A."**

10. On or about January 18, 2020, Larry received, by mail, his Notice of Right to Sue (the "Notice") from the EEOC for the Charge. A copy of the Notice is attached hereto and incorporated herein by reference as **"Exhibit B."**

11. Larry timely filed this Complaint against Bennington within ninety (90) days of receiving the Notice.

### V.     FACTUAL STATEMENT OF THE CLAIM

12. Bennington hired Larry as an hourly, full-time, assembly-level employee in the fabrication department on or about January 15, 2015, making $14.00 an hour. Larry's Group Leader was named "Tony."

13. Since his start date, Larry had four positive performance reviews and received regular pay increases to accompany the reviews.

14. Bennington has two different welding areas—the tungsten inert gas "("TIG") area and the metal inert gas ("MIG") area.

15. In March 2017, Larry advanced to become a TIG welder. Larry's pay was increased to the welders' rate of $19.25 an hour on May 12, 2017.

16. In August 2017, Larry's Group Leader Tony left Bennington for a position at a competing company. This competitor actively recruited Bennington's welders by offering significant pay increases.

17. On September 15, 2017, as a tactic to prevent losing too many welders to this competitor, Bennington gave all its welders a one-time increase of approximately $2.00 an hour. At the same time, Bennington implemented a policy to conduct semi-annual reviews for welders, instead of annual reviews, to help increase welders' pay quicker.

18. Dave Mills, a white male, became Larry's new Group Leader shortly after Tony left and the new review and pay policies were implemented.

19. Under Group Leader Dave's supervision, Larry was not informed about the semi-annual reviews, and only received his annual reviews.

20. Larry had worked as a MIG welder for approximately a year and half when he and other welders were discussing their pay rate. Upon discussion with his fellow welders, Larry concluded that he should have a higher hourly rate.

21. Considering he was the only black welder in his area, Larry believed the difference in pay was due to his race.

22. In September 2018, Larry approached his manager, Dan Gorbics ("Manager Gorbics"), a white male, about his pay. He asked why he had a lower pay rate than his fellow white welders.

23. Manager Gorbics informed Larry that the difference in pay "had to do with how many different jobs you can do."

24. In December 2018, Bennington's foreman, "Bruce," agreed to allow Larry to move to the TIG welding area to learn a different job. Larry had to train his assistant, "Corey," on his job before transferring to the TIG area.

25. Foreman Bruce said Larry would receive a pay increase upon passing the exam for TIG welders.

26. Larry passed the TIG welders' exam but never received the raise as he was told. When he asked Foreman Bruce about the raise, Bruce said to speak to Manager Gorbics. Gorbics refused to give Larry the raise.

4

27. In June 2019, Larry was asked to temporarily help the MIG area because Corey, formerly his assistant, had walked off the job. Manager Gorbics told Larry he would need to help only two days until they hired someone to fill the vacant position.

28. While Larry was assisting in the MIG area, "Steve," a white welder, began talking about the semi-annual raises all welders were supposed to receive. Larry was unaware of this semi-annual raise so Larry thought Steve, being a newer employee, was mistaken.

29. Steve told Larry to ask "Potter," a Group Leader, about the semi-annual raise for confirmation.

30. Potter confirmed all welders were supposed to get semi-annual reviews for raises.

31. Again, believing he was being treated unfairly because of his race, Larry immediately went to Manager Gorbics and Foremen Bruce to confirm there was a semi-annual raise for all welders and to inquire why he was not getting the raise the white welders were receiving. Bruce confirmed Larry should be getting the raise and said he would email "Sandy from HR" about it.

32. The next day, Group Leader Dave came up to Larry and began cursing at him. When Larry asked Dave to stop cussing at him, Dave told Larry to go to HR if he did not like it.

33. Larry believed Group Leader Dave was upset because Dave found out Larry asked Dave's supervisors about the unfair treatment concerning raises. Larry immediately went to HR to complain.

34. Larry met with "Kenan from HR," Foreman Bruce and Manager Gorbics and about the harassing behavior from Group Leader Dave and the unfair treatment regarding the missing reviews and raises. Kenan confirmed all welders were supposed to receive the semi-annual

5

reviews for raises. Kenan checked Larry's personnel records and told Larry he should have been receiving the semi-annual raises.

35. Larry mentioned that Foreman Bruce was supposed to contact "Sandy from HR" about Larry's missed raises. Bruce stated he had not received a response from Sandy yet. They all discussed paying Larry backpay for the missed raises and scheduling his first semi-annual review in July 2019.

36. The next day after meeting with HR and Larry's managers, Group Leader Dave increased his scrutiny of Larry. That day, Dave was seen hiding while watching Larry work; Dave interrogated a maintenance tech about whether Larry really needed a replacement piece from maintenance; and Dave was seen searching through Larry's work station when Larry went to the maintenance department.

37. On July 10, 2019, approximately two weeks after Larry went to management ad HR about the discriminatory pay practices, Larry was informed he was selected to be laid off without pay or benefits, effectively immediately. The layoff notice stated individuals were selected based on the following criteria:

> "…performance, skill and ability in work assignments, production records, attendance, and length of service of each employee. When all other criteria are approximately equal, length of service is the determining factor."

38. Larry was the only welder in the building selected for layoff.

39. Larry had significantly more experience and length of service than most of the welders; he was tasked with training welders; he had not missed a day of work for approximately nine (9) months; he had no issues with production quantity; and he did not receive any write-ups

concerning his performance. Larry's only warnings were from wearing earbuds which, despite the recent policy implemented against it, was a common practice among the other welders.

40. After being laid off, Larry asked Kenan and Sandy from HR why he had been laid off. Larry expressed that he feels he had been retaliated against for him voicing his concern over the discriminatory pay practices.

41. Sandy from HR stated she was confused why Larry had been selected because he did not meet the criteria. Kenan also stated he did not know why Larry was selected and would have to inquire about it.

42. Larry never received an answer as to why he was selected for layoff from Kenan or Sandy.

43. Larry was selected for layoff in retaliation for complaining to management about the racially discriminatory pay practices and suffered damages.

## VI. RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

44. The foregoing paragraphs are realleged and incorporated by reference herein.

45. Larry is black and in a protected class.

46. Larry was qualified for the welder position and performed the job adequately according to reasonable standards.

47. Larry was denied the semi-annual reviews and raises that other similarly situated white welders, reporting to the same group leader and manager, received because of his race.

48. Due to Bennington's willful and intentional racial discrimination against Larry in violation of Title VII, Larry continues to suffer financially and emotionally for which he is entitled to relief from Bennington.

## VII.   RETALIATION IN VIOLATION OF TITLE VII

49. The foregoing paragraphs are realleged and incorporated by reference herein.

50. Larry engaged in statutorily protected activity when he complained to management about the racially discriminatory behavior concerning his pay rate and the failure to conduct his semi-annual reviews for pay raises like the white welders.

51. Larry suffered material adverse actions when Bennington selected him for layoff, although other welders would have been selected instead based on the criteria provided.

52. Bennington's material adverse actions toward Larry were linked to and in response to Larry's protected activity.

53. Due to Bennington's willful and intentional retaliation against Larry in violation of Title VII, Larry continues to suffer financially and emotionally for which he is entitled to relief from Bennington.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests judgment in her favor and against Defendant and that the court award him the following:

(a)   Compensatory damages in an amount reasonable to compensate him for damages suffered as a result of the retaliation;

(b)   A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

(c)   Punitive damages in whatever amount he is found to be entitled;

(d)   An award of pre- and post- judgment interest, costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(e) Other damages and further relief as deemed just.

Respectfully submitted,

/s/ Peter J. Agostino
Pete J. Agostino (10765-71)
Myra R. Reid (35583-71)
ANDERSON, AGOSTINO & KELLER, P.C.
131 S. Taylor Street
South Bend, IN 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
E-mail: agostino@aaklaw.com
E-mail: reid@aaklaw.com

*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury.

/s/ Peter J. Agostino
Peter J. Agostino (10765-71)